UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEUTSCHE ZENTRAL-GENOSSENCHAFTSBANK AG, NEW YORK BRANCH, d/b/a DZ BANK AG, NEW YORK BRANCH; HSH NORDBANK AG; HSH NORDBANK AG, LUXEMBOURG BRANCH; HSH NORDBANK AG, NEW YORK BRANCH; and HSH NORDBANK SECURITIES S.A., | Civil Action No. 12-cv-4025-AT |
| Plaintiffs, | Oral Argument Requested |
| -against- | |
| HSBC NORTH AMERICA HOLDINGS, INC.; HSBC USA INC.; HSBC MARKETS (USA) INC.; HSBC BANK USA, N.A.; HSI ASSET SECURITIZATION CORPORATION; HSBC SECURITIES (USA) INC.; BLAYLOCK & COMPANY INC.; and BLAYLOCK ROBERT VAN LLC, | |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF ABBREVIATIONS ........................................................................ v

I.   ALL OF PLAINTIFFS' CLAIMS ARE TIME-BARRED.................................... 1

     A.   The *Lang* Exception Does Not Apply To DZ Bank's Claims. ................... 1

     B.   Plaintiffs' Complaint Demonstrates That Their Claims are Time-
          Barred................................................................................................ 4

II.  THE COMPLAINT FAILS TO STATE A CLAIM REGARDING THE
     TIMELY TRANSFER OF LOAN FILES ............................................. 6

III. PLAINTIFFS' FRAUD CLAIMS MUST BE DISMISSED ................................. 8

IV.  PLAINTIFFS' NEGLIGENT MISREPRESENTATION AND
     FRAUDULENT CONCEALMENT CLAIMS MUST BE DISMISSED ........... 10

V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR MUTUAL MISTAKE ........... 11

CONCLUSION........................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

## CASES

*AB ex rel. EF v. Rhinebeck Cent. Sch. Dist.*,
  361 F. Supp. 2d 312 (S.D.N.Y. 2005)............................................................................ 3

*Amusement Indus., Inc. v. Stern*,
  786 F. Supp. 2d 758 (S.D.N.Y. 2011)......................................................................... 10

*Baena v. Woori Bank*,
  05-civ-7018, 2006 WL 2935752 (S.D.N.Y. Oct. 11, 2006) ......................................... 2

*Bank Hapoalim B.M. v. Bank of Am. Corp.*,
  12-civ-4316, 2012 WL 6814194 (C.D. Cal. Dec. 21. 2012).................................... 6, 7

*Bank of N.Y. v. Silverberg*,
  926 N.Y.S.2d 532 (2d Dep't 2011)............................................................................... 7

*Century Pacific, Inc. v. Hilton Hotels Corp.*,
  No. 03-civ-8258, 2004 WL 868211 (S.D.N.Y. Apr. 21, 2004) ................................... 9

*Chase Home Finance, LLC v. Miciotta*,
  956 N.Y.S.2d 271 (3d Dep't 2012)............................................................................... 7

*Deutsche Bank Nat'l Trust Co. v. Haque*,
  2012 WL 2435577 (N.Y. Sup. Ct. June 20, 2012)........................................................ 7

*ESPN, Inc. v. Office of the Comm'r of Baseball*,
  76 F. Supp. 2d 383 (S.D.N.Y. 1999)........................................................................... 10

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004)........................................................................................ 10

*Fed. Home Loan Bank of Chicago v. Banc of Am. Fundingcorporation*,
  No. 10 CH 45033, 2012 WL 4364410 (Ill. Cir. Ct. Sept. 19, 2012)........................... 6

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co*,
  902 F. Supp. 2d 476 (S.D.N.Y. 2012)........................................................................... 8

*Global Fin. Corp. v. Triarc Corp.*,
  93 N.Y.2d 525 (N.Y. 1999) ......................................................................................... 2

*J.A.O. Acquisition Corp. v. Stavitsky*,
  8 N.Y.3d 144 (N.Y. 2007) ........................................................................................... 9

*Kimmel v. Schaefer*,
    89 N.Y.2d 257 (N.Y. 1996) ........................................................................ 9, 10

*Landesbank Baden-Wurttemberg v. Goldman, Sachs & Co.*,
    821 F. Supp. 2d 616 (S.D.N.Y. 2011) ........................................................... 9

*Lang v. Paine, Webber, Jackson & Curtis, Inc.*,
    582 F. Supp. 1421 (S.D.N.Y. 1984) .......................................................... 1, 2, 3

*LeBoeuf L.L.P. v. Worsham*, 185 F.3d 61 (2d Cir. 1999) .................................... 4

*Oxbow Calcining USA Inc. v. Am. Indus. Partners*,
    948 N.Y.S.2d 24 (1st Dep't 2012) ................................................................. 2

*Phoenix Light SF Limited v. Ace Securities Corp.*,
    2013 WL 1788007 (N.Y. Sup. Ct. Apr. 24, 2013) ........................................ 5

*Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*,
    10-civ-5999, 2012 WL 488257 (S.D.N.Y. Feb. 14, 2012) ......................... 2

*Salzmann v. Prudential Securities Inc.*,
    91-civ-4253, 1994 WL 135821 (S.D.N.Y. May 16, 1994) ........................ 2

*Stichting Pensioenfonds ABP v. Credit Suisse Grp. AG*,
    2012 WL 6929336 (N.Y. Sup. Ct. Nov. 30, 2012) .................................. 3, 6

*U.S. Bank N.A. v. Bresler*,
    2013 WL 1339550 (N.Y. Sup. Ct. Apr. 3, 2013) ........................................ 7

*Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*,
    11-civ-2327, 2013 WL 1342529 (S.D.N.Y. Mar. 29, 2013) ................... 8, 9

*Verizon Directories Corp. v. Continuum Health Partners, Inc.*,
    902 N.Y.S.2d 343 (1st Dep't 2010) ............................................................. 2

*Woori Bank v. Merrill Lynch*,
    12-civ-3993 (S.D.N.Y. Feb. 6, 2013) .................................................... 2, 6

**STATUTES**

28 U.S.C. § 1746 ............................................................................................ 4

C.P.L.R. § 202 ................................................................................................ 1

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1, 10

iii

Fed. R. Civ. P. 9(b) ............................................................................................... 7

## TABLE OF ABBREVIATIONS

**Defendants adopt the abbreviations and defined terms used in Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Consolidated Complaint (dated April 23, 2013). They also supplement that list with the following abbreviations and defined terms as set forth below**

| | |
|---|---|
| **Amendola Aff.:** | Affidavit of Carl Amendola, dated May 23, 2013 |
| **Mansel Decl.:** | Declaration of Heinz-Peter Mansel, dated May 23, 2013 |
| **Mem.:** | Defendants' Memorandum of Law in Support of their Motion to Dismiss the Consolidated Complaint, dated April 23, 2013 |
| **Moon Reply Decl.:** | Reply Declaration of William J. Moon in Further Support of the Defendants' Motion to Dismiss the Consolidated Complaint |
| **Nedden Reply Decl.:** | Reply Declaration of Jan Heiner Nedden in Further Support of the Defendants' Motion to Dismiss the Consolidated Complaint |
| **Opp. or Opposition:** | Plaintiff's [sic] Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint, dated May 24, 2013 |

Defendants submit this reply memorandum of law in further support of their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## I.      ALL OF PLAINTIFFS' CLAIMS ARE TIME-BARRED

In the opening memorandum, Defendants demonstrated that all of Plaintiffs' claims are time-barred.  Defendants showed that (a) under New York's borrowing statute, the German statute of limitations applies to both Plaintiffs' claims because both felt their alleged injuries in Germany, and (b) the Complaint itself demonstrates that Plaintiffs were aware of – or were grossly negligent in not knowing – the basis for these claims no later than 2008.  In response, Plaintiffs acknowledge that HSH Bank's claims are governed by the German statute of limitations, but argue that under *Lang v. Paine, Webber, Jackson & Curtis, Inc.*, 582 F. Supp. 1421 (S.D.N.Y. 1984), the New York statute of limitations applies to DZ Bank's claims. Plaintiffs also argue that even under the shorter German statute of limitations, Plaintiffs' claims are timely because they did not have sufficient information to bring their claims prior to 2009.

Plaintiffs are wrong on the law and the facts.  First, Plaintiffs fail to cite a single case – and Defendants are aware of no case – where *Lang* applied to the claims of a non-resident corporate plaintiff with its principal place of business outside New York.  Second, Plaintiffs' own Complaint is littered with references to pre-2009 facts and information – including ratings downgrades, other litigations, public reports, news articles, and loan transfer files – that were easily knowable to the Plaintiffs and that Plaintiffs assert establish each element of their claims.

### A.      The *Lang* Exception Does Not Apply To DZ Bank's Claims.

In order to prevent forum shopping by time barred claimants, C.P.L.R. § 202 requires that the claims of non-resident plaintiffs – such as DZ Bank and HSH Bank – be timely filed by the shorter of the statute of limitations of either (a) New York or (b) the jurisdiction where the claim accrued.  Under New York law, tort and contract claims are deemed to accrue at the time and

place of the injury.  *See Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (N.Y. 1999).
The cases applying this standard to foreign corporations uniformly hold that the place of the
injury is either the place of incorporation or the principal place of business – here, Germany.[1]

Plaintiffs do not mention – much less distinguish – these cases, instead asserting that the
*Lang* exception applies because DZ Bank maintained a presence in New York.  Plaintiffs cite a
series of cases that purportedly "followed *Lang*," but fail to mention that although *Lang* is often
cited, the exception has only been held to apply **one** time in the nearly 30 years since *Lang* was
decided.  And, that case, *Salzmann v. Prudential Securities Inc.*, 91-civ-4253, 1994 WL 135821
(S.D.N.Y. May 16, 1994), did not involve a foreign corporate plaintiff.

Simply put, maintaining a branch office in New York – however extensive its activities –
does not alter the place of accrual for a foreign corporate plaintiff.  As this Court noted, **no court**
has "applied the limited *Lang* exception to hold that a corporate entity's claims accrued outside
of its principal place of business."  *Robb Evans*, 2013 WL 123727, at *1.   This Court should
decline Plaintiffs' invitation to be the first.

The *Baena* case is instructive.  *See Baena*, 2006 WL 2935752, at *6.  In *Baena*, the

---

[1] *See Woori Bank v. Merrill Lynch*, 12-civ-3993, at *3 (S.D.N.Y. Feb. 6, 2013) (holding that
foreign bank is a resident "where it maintains its principal place of business" regardless of
"whether [it] has a significant connection to New York"); *Oxbow Calcining USA Inc. v. Am.
Indus. Partners*, 948 N.Y.S.2d 24, 30 (1st Dep't 2012) (holding that place of injury is either "the
state of incorporation or its principal place of business"); *Baena v. Woori Bank*, 05-civ-7018,
2006 WL 2935752, at *7 (S.D.N.Y. Oct. 11, 2006) (concluding that foreign plaintiff felt the
"economic impact" of the injury "in Belgium where the company resided"); *Robb Evans &
Assocs. LLC v. Sun Am. Life Ins.*, 10-civ-5999, 2012 WL 488257, at *3 (S.D.N.Y. Feb. 14, 2012)
(rejecting argument that foreign corporation is also "a resident of New York because it engaged
in business and maintained an office for the regular transaction of its business in New York, and
thus has a 'significant connection' to New York"); *Verizon Directories Corp. v. Continuum
Health Partners, Inc.*, 902 N.Y.S.2d 343, 343 (1st Dep't 2010) ("plaintiff is a 'resident' of, and
its cause of action accrued in, Delaware, the state of its incorporation.").

relevant entity was a subsidiary of a Belgium corporation (thus presenting a stronger case for application of *Lang* than here because DZ Bank's New York branch is not a distinct legal entity). The court held that *Lang* did not apply because "the economic impact of the injury was ultimately felt by L & H Belgium in Belgium where the company resided." *Id.* at *7. Here, like in *Baena*, the capital contribution to the New York branch was supplied by DZ Bank's corporate treasury in Germany, (*see* Moon Decl. Ex. R (Dep. Tr.) at 153:25-154:15), and any loss felt through the depreciation of the Certificates was realized in the form of write-downs that affected the net income of DZ Bank AG in Germany.  (*See id.* at 48:4-49:13; 143:16-144:3).

DZ Bank's argument fails not only on the law, but also on the facts.  First, the "separate" base is fictitious because all operations constitute part of a single entity – headquartered in Germany – that paid dividends to its shareholders in Germany.  (*See id.* at 45:5-25).[2]  Thus, DZ Bank felt the loss in these Certificates in Germany.  Second, Plaintiffs' laundry list of factors that purportedly warrants application of the *Lang* exception (such as operating pursuant to a New York license, Opp. at 5-6) are "hardly unusual for a major institution conducting financial business," and do not justify a departure from the well-settled case law cited above.  *Stichting Pensioenfonds ABP v. Credit Suisse Grp. AG*, 2012 WL 6929336, slip op. at 2 (N.Y. Sup. Ct. Nov. 30, 2012); *see Verizon*, 902 N.Y.S.2d at 343 (rejecting *Lang*'s principles even though

_____

[2] Plaintiffs' Amendola Aff. is a thinly-veiled attempt to draw attention away from Mr. Amendola's damaging deposition testimony cited in Defendants' opening memorandum. The Amendola Aff., however, does nothing to undermine the admissions extracted during his deposition testimony, and actually contains statements favorable to Defendants' position. *See, e.g.*, Amendola Aff. ¶ 6 (DZ Bank AG is the taxable entity that files federal, state and city returns); ¶ 15 (alleged losses on Certificates ultimately impacted DZ Bank AG's equity capital). Moreover, to the extent that affidavit contradicts the deposition testimony, the affidavit must be disregarded. *See AB ex rel. EF v. Rhinebeck Cent. Sch. Dist.*, 361 F. Supp. 2d 312, 316 (S.D.N.Y. 2005) ("court should not accept an affidavit that contradicts deposition testimony").

plaintiff was authorized to do business in New York and "asserted extensive presence here").

**B.      Plaintiffs' Complaint Demonstrates That Their Claims are Time-Barred.**

A simple review of the Complaint confirms that Plaintiffs' allegations rest upon information known or easily knowable before 2009, rendering their claims time barred under German law.[3]  This result is supported by a number of concessions in Plaintiffs' Opposition, including that (i) the applicable German statute of limitations runs from three years from the end of the year during which a plaintiff had ***either*** actual knowledge of facts to assert a claim *or* was grossly negligent in not acquiring such knowledge, (Opp. at 8); (ii) "gross negligence" is met if "the circumstances giving rise to the claim ***suggested themselves*** and [plaintiff] did not avail himself of ***easily accessible sources of information***," (Mansel Decl. ¶ 14) (emphasis added); (iii) commercial entities such as Plaintiffs are expected to have "a different scope of knowledge" than consumers, presumably greater knowledge (*id.* ¶ 15); and (iv) Plaintiffs' owed a duty to investigate accessible sources of information, (*id.* ¶¶ 16-17).[4]

Thus, even under Plaintiffs' formulation of the gross negligence standard, dismissal is appropriate.  First, the Complaint itself admits that the claim "suggested itself" well before 2009.  Critically, Plaintiffs admit that when the values of the Certificates declined and they were

---

[3] Plaintiffs' declaration on German law should be stricken as unsworn and not in compliance with 28 U.S.C. § 1746. *See LeBoeuf L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999).

[4] Plaintiffs' expert does not, at the end of the day, dispute the notion that sophisticated entities are subject to a heightened duty to investigate.  Plaintiffs' expert concedes that there exists a duty to investigate.  (He opines that this duty runs not "to the debtor" but rather to the plaintiff himself, "to protect his own interest," but this is a distinction without a difference.  (Mansel Decl. ¶ 16; Nedden Reply Decl. ¶¶ 16-20)).  And, Plaintiffs' expert also concedes that sophisticated entities have "a different scope of knowledge" than consumers.  It is obviously the case that sophisticated entities are better positioned, due to their "different scope of knowledge," to better "protect themselves" by accessing "easily accessible" information, and Mansel does not opine otherwise. (Nedden Reply Decl. ¶¶ 22-27, 37-43).

downgraded to junk status (which occurred in 2008), the "***true nature of the credit risk***

***materialized***." (Compl. ¶ 207) (emphasis added).  Indeed, in 2008, HSH Bank brought suit

against UBS AG using the credit rating decline to support the allegation that defendants

overstated the quality of notes backed by RMBS.  Moreover, virtually all of the facts alleged in

the Complaint were "easily accessible" in 2008.  It is undisputed that news reports regarding

issues with each and every originator at issue in this case were available in 2008.  It is

undisputed that loan assignments and satisfactions (that Plaintiffs use to allege scienter) were

publicly available in 2008.  And it is undisputed that the data necessary to run Plaintiffs' loan

level analysis and analysis of home ownership were equally available in 2008.

     HSH Bank and DZ Bank were sophisticated entities facing steep losses on RMBS

portfolios in the midst of a historic housing crash causing substantial harm to their balance

sheets.  Each bank published reports in 2008 documenting substantial credit downgrades in their

portfolios, and DZ Bank further warned of write-downs.  (Moon Decl. Ex. L at 20-21, and Ex.

X).  In light of Plaintiffs' own actions in 2008 and their level of sophistication, it is

inconceivable that they could discharge their "duty to protect themselves" without reviewing the

mountain of information sitting right before their eyes.[5]  (Nedden Reply Decl. ¶¶ 28-31, 46).

     Despite the fact that HSH Bank brought similar claims against UBS in 2008, Plaintiffs,

relying upon *Phoenix Light SF Limited v. Ace Securities Corp.*, 2013 WL 1788007, slip op. (N.Y.

Sup. Ct. Apr. 24, 2013), assert that they could not have brought these claims until much later.

*Phoenix*, however, is inapposite because the allegations of scienter were principally based on

---

[5] Plaintiffs make a sweeping accusation that the Defendants' expert opinion of German news
sources is "misleading." (Opp. at 11).  This assertion is false, as the Nedden Declaration is
accurate in how it quotes public reports, including the one and only article Plaintiffs' specifically
allege was misrepresented. (*See* Nedden Reply Decl. ¶ 49).

*internal documents* unavailable in 2008.  *See, e.g.*, *Phoenix* Compl. ¶ 264 (citing internal emails denigrating defendants' offering as "a piece of crap"); *id.* ¶ 265 (alleging that "negative views of RMBS" were communicated to defendants' "top executives") (Moon Reply Decl. Ex. EE).  They were not, as here, principally based upon allegations of news reports, publicly recorded loan transfer files, and other information known and/or easily accessible before 2009.  To the extent these allegations state a claim, that claim is time barred.[6]

## II.   THE COMPLAINT FAILS TO STATE A CLAIM REGARDING THE TIMELY TRANSFER OF LOAN FILES

In the opening memorandum, Defendants cited the well-reasoned opinion in *Bank Hapoalim B.M. v. Bank of Am. Corp.*, 12-civ-4316, 2012 WL 6814194 (C.D. Cal. Dec. 21. 2012), for the proposition that the transfer claim should be dismissed.  In *Bank Hapoalim*, the plaintiffs – represented by the same lawyers representing Plaintiffs here – alleged that the offering documents "misrepresent that the certificates were 'mortgage backed securities.'"  *Id.* at *8.  The court, applying New York law, dismissed the claim holding that (a) the offering documents' "straight forward description of the PSA's requirements' cannot support a claim for fraud," (b) an investor's "remedy for alleged violations of the PSA is to sue the trusts," (c) the mortgages were transferred by the PSAs, and (d) the plaintiff failed to alleged injury.  *Id*.  In

_____

[6] As explained in the opening memorandum and *infra*, Plaintiffs are incorrect to state that their claims "could not be brought against Defendants until HSBC's due diligence provider revealed in 2010" that HSBC was aware that "loans did not comply with underwriting guidelines.  (Opp. at 11).  First, Plaintiffs support scienter allegations in substantial part by reference to loan file transfers and assignments that were publicly recorded in 2008.  Second, the Clayton Report does not permit the inference Plaintiffs attempt to draw.  As this Court recently held, because many FCIC sources "merely rehash information published years earlier in articles or other publically available materials," they do not constitute "the marker for the first practicable moment a private plaintiff may exercise the ability to bring a civil action."  *Woori Bank v. Merrill Lynch*, 12-civ-3993, 2013 WL 449912, at *6 (S.D.N.Y. Feb. 6, 2013).

their Opposition, Plaintiffs do not address this decision that is squarely on point.  Instead, Plaintiffs string cite without analysis (Opp. at 13) decisions that, unlike *Bank Hapoalim*, do not directly address the operative language of the PSA that bars their claims here.[7]

Notably, Plaintiffs do not dispute that the trusts have been exercising all rights of ownership of the loans, including, for example, receipt of payment flows from borrowers. Nor do Plaintiffs point to a single instance where the trusts' ownership rights have been questioned. Rather, Plaintiffs argue that the PSAs required endorsement and delivery of the notes in order to effectuate a transfer.  Plaintiffs' position, however, ignores (i) that the delivery of the "documents or instruments with respect to each Mortgage Loan" was to be "***[i]n connection with*** the transfer and assignment," (Moon Decl. Ex. Y, at 52) (emphasis added), and (ii) well-settled New York law recognizing that "no special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it." *Bank of N.Y. v. Silverberg*, 926 N.Y.S.2d 532, 537 (2d Dep't 2011); *see Chase Home Finance, LLC v. Miciotta*, 956 N.Y.S.2d 271, 273 (3d Dep't 2012). The transfer of ownership was not contingent on the transfer of loan files, and the timing of delivery does not alter the fact that the PSA effectuated transfer of ownership to the trust at closing.  *See* Mem. at 16-17.

Plaintiffs claim that "the trend in the New York courts" is that "contractual provisions in PSAs are insufficient to transfer ownership of mortgage loans" (Opp. at 15).  This purported

---

[7] In the first case that Plaintiffs cite, *Stichting,* 2012 WL 6929336, the court does not even address whether the complaint adequately pleaded a misrepresentation based on untimely transfer of loan files, let alone address specific language in the PSA.  Similarly, in *Fed. Home Loan Bank of Chicago v. Banc of Am. Fundingcorporation*, No. 10 CH 45033, 2012 WL 4364410, at *12-13 (Ill. Cir. Ct. Sept. 19, 2012), the court applies Illinois law to a motion to dismiss state Blue Sky and negligent misrepresentation claims – not fraud claims – and does not analyze the language of the PSA.

"trend" is, in fact, one New York trial court opinion in the loan foreclosure context that did not consider the argument that "the Note was transferred '[t]hrough the PSA and through transfer of physical possession'" because the plaintiff did not properly raise it.  *U.S. Bank N.A. v. Bresler*, 2013 WL 1339550, slip op. at *3 (N.Y. Sup. Ct. Apr. 3, 2013).[8]

Plaintiffs fare no better in attempting to allege any cognizable "loss" and merely recycle arguments rejected in *Bank Hapoalim*, 2012 WL 6814194, at *8 ("allegations of title transfer fraud fail to plead injury").  Accordingly, all claims based on the untimely transfer of loan files must be dismissed.

## III.   PLAINTIFFS' FRAUD CLAIMS MUST BE DISMISSED

Plaintiffs' fraud claims cannot survive Fed. R. Civ. P. 9(b)'s heightened pleading standard.  Plaintiffs rely on *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co*, 902 F. Supp. 2d 476 (S.D.N.Y. 2012), to argue that their allegations are sufficient.  At the same time, Plaintiffs ignore *Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*, 11-civ-2327, 2013 WL 1342529, at *5 (S.D.N.Y. Mar. 29, 2013), which dismissed claims for failure to allege scienter.

The difference in the outcomes of *JPMorgan* and *Union Central* is not the result of the application of different legal analysis, but rather is driven by the stark differences in the quality of the allegations in the respective complaints; the allegations here resemble those deemed insufficient in *Union Central*.  The complaint in *JPMorgan* put forth "a variety of allegations" that when "taken together" adequately pled scienter.  *JPMorgan*, 902 F. Supp. 2d at 491. These allegations included statements from no fewer than **six confidential witnesses**, as well as quotes

---

[8] Plaintiffs' reliance on *Haque* is misplaced.  That decision does not even discuss the language of the trust provision at issue.  *See Deutsche Bank Nat'l Trust Co. v. Haque*, 2012 WL 2435577, slip op. (N.Y. Sup. Ct. June 20, 2012).

from *internal documents* demonstrating knowledge at JPM's own subprime lending arm, CHF, of issues with mortgages included in JPM's securitizations. *Id.* at 492. (CHF originated "all or the majority of loans underlying six of the securitizations at issue"). The complaint alleged the existence of a memorandum to CHF employees containing "cheats & tricks" that would allow unqualified borrowers to obtain low-documentation loans.[9] *Id.* at 492-93.

By contrast, the Complaint here, as well as the complaint in *Union Central*, contains no similarly detailed allegations. *See* Compl. ¶¶ 97-136, 166-169; *Union Central* Compl., 2012 WL 3017703, at ¶¶ 84-165 (attached as Moon Reply Decl. Ex. FF). Instead, the Complaint here, and in *Union Central*, suffers from overreliance on the Clayton Report. But, because that report cannot be linked to the particular loans underlying Plaintiffs' Certificates, it supports only allegations about the industry generally. Because of this, the court in *Union Central* held that the Report "do[es] not compel an inference that Defendants knew, as Plaintiffs allege, that the originators had 'completely abandoned their underwriting standards.'" 2013 WL 1342529, at *7.

Plaintiffs fail to confront this, instead stating that "[n]umerous courts have upheld use of the Clayton Reports to establish scienter." (Opp. at 21). None of Plaintiffs' cases, however, held that the Report *by itself* establishes scienter. Moreover, despite Plaintiffs' characterization of Defendants' factual "quibble" with the Report, Plaintiffs fail to point to any statement in the

---

[9] Notwithstanding the relative strength of the allegations, the *JPMorgan* court nonetheless dismissed, as the Plaintiffs concede (Opp. at 19 n.19), LTV and owner-occupancy claims. While Plaintiffs assert that the Complaint here alleges that the due diligence performed by Clayton included an analysis into LTV and owner-occupancy rates, the *JP Morgan* court plainly rejected the "apparent disparity between the owner-occupancy and LTV figures reported in the Offering Documents and the results of the Agency's own analysis" as a basis to allege scienter. *JPMorgan Chase & Co.*, 902 F. Supp. 2d at 493. The problem is not that they had failed to allege fraud, but rather, like the present case, there was not "any basis for believing that [the Defendant] was aware . . . ." *Id.*

Report permitting an inference that HSBC waived into a securitization a loan that it knew was improperly originated.  Plaintiffs' fraud claims should be dismissed.

## IV.    PLAINTIFFS' NEGLIGENT MISREPRESENTATION AND FRAUDULENT CONCEALMENT CLAIMS MUST BE DISMISSED

It is black letter law that in order to support a claim of negligent misrepresentation or fraudulent concealment, a complaint must allege with particularity the existence a special relationship between the parties giving rise to a duty to impart correct information.  The cases are legion that the transactions at issue here do not give rise to such a duty.[10]  Unable to distinguish these cases, Plaintiffs simply ignore them and cite to a string of inapposite cases in the hope of muddying the water such that that the Court will allow the claims to proceed.[11]

While Plaintiffs would like this Court to determine that this issue "is a question of fact for trial," (Opp. at 23), the Second Circuit has held that where the plaintiff has not pled a "special relationship of trust or confidence," and where "the allegations with respect to the other *Kimmel* factors . . . are soft, a claim for negligent misrepresentation is dismissible under Rule 12(b)(6)." *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 782 (S.D.N.Y. 2011) (quoting *Eternity*

---

[10] *See Stichting Pensioenfonds ABP v. Credit Suisse Grp. AG, 2012 WL 6929336, slip op. at *13 (N.Y. Sup. Ct. Nov. 30, 2012); Landesbank v. Goldman, Sachs & Co.*, 821 F. Supp. 2d 616, 624 (S.D.N.Y. 2011); *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (N.Y. 2007).

[11] All four of the cases cited by the Plaintiffs rely on The New York Court of Appeals decision in *Kimmel*.  (Opp. at 22 & n.23).  *Kimmel* requires that defendant be "in a special position of confidence and trust with the injured party."  *Kimmel v. Schaefer*, 89 N.Y.2d 257, 263 (N.Y. 1996).  For instance, in *Century Pacific, Inc. v. Hilton Hotels Corp.*, the complaint included detailed "oral and written statements" between parties, including "repeated assurances" from the defendants that led up to the relevant agreement.  03-civ-8258, 2004 WL 868211, at *2 (S.D.N.Y. Apr. 21, 2004).  Plaintiffs in this case fail to plead sufficient facts to demonstrate a special relationship.  In fact, at most two paragraphs in the Complaint even mention or suggest actual conduct by Defendants apart from putting together the Offering Materials: the fact that Plaintiffs "purchased each Certificate directly from Underwriter Defendants."  *See* Compl. ¶¶ 1, 42.  This is the precise arms-length commercial transaction that cannot give rise to a special duty.

*Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004)).

This Court should follow the steady line of cases dismissing these exact types of claims.

## V.    PLAINTIFFS FAIL TO STATE A CLAIM FOR MUTUAL MISTAKE

Plaintiffs' contention that it may allege mutual mistake as an alternative theory of liability badly misses the mark.  No party was mistaken about the requirements of the PSA, which transferred beneficial ownership of the loans to the trust.  To the extent loan files followed later, there is conceivably an action for breach of contract, but not mutual mistake.

Moreover, Plaintiffs cite no law that excuses their unreasonable delay in bringing this claim.  (Opp. at 25).  The information upon which Plaintiffs base this claim are "publicly-recorded satisfactions and assignments that date to 2008."  Mem. at 24.  Plaintiffs elected to continue and receive the benefits of the contract, foreclosing a claim for mistake.  *ESPN, Inc. v. Office of the Comm'r of Baseball*, 76 F. Supp. 2d 383, 392 (S.D.N.Y. 1999).

<u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss the claims asserted against them in the Complaint in their entirety, with prejudice.

11

Dated: New York, New York
       June 13, 2013

By: _____
Kenneth Murray
BEUGELMANS, PLLC
80 Broad Street, Suite 1302
New York, NY 10004
Phone: (646) 350-0050
Facsimile: (646) 304-6897
Email: kmurray@beugelmans.com

*Attorney for Blaylock Robert Van, LLC*

Respectfully Submitted,

By: _____
Damien J. Marshall, Esq.
Andrew Z. Michaelson, Esq.
Jaime Sneider, Esq.
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Phone: (212) 446-2300
Facsimile: (212) 446-2350
Email: dmarshall@bsfllp.com
Email: amichaelson@bsfllp.com
Email: jsneider@bsfllp.com

Edward J. Normand
BOIES, SCHILLER & FLEXNER LLP
333 Main Street
Armonk, NY 10504
Phone: (914) 749-8200
Facsimile: (914) 749-8300
Email: enormand@bsfllp.com

Mark G. Hanchet
Michael O. Ware
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820
Phone: (212) 506-2500
Facsimile: (212) 262-1910
Email: mhanchet@mayerbrown.com
Email: mware@mayerbrown.com

*Attorneys for HSBC Defendants*